IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

K.S. and J.H., :
      Plaintiffs : No. 1:17-cv-00036
:
v. : (Judge Kane)
:
PAT J. BRUNO, M.D., and :
EVAN WALLACE CROWE, M.D., :
      Defendants :

## MEMORANDUM

Before the Court are (1) Defendants Patrick J. Bruno, M.D., and Evan Wallace Crowe, M.D. (the "Medical Defendants") motion to dismiss Plaintiffs K.S. and J.H.'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 13), and (2) the Medical Defendants' and Non-Party Geisinger Health's motion for a protective order (Doc. No. 19). For the following reasons, the Court will grant the Medical Defendants' motion to dismiss, and deny the pending motion for a protective order as moot.

## I. BACKGROUND[1]

This case arises out of a child abuse investigation that resulted in B.H.'s temporary removal from the custody of his mother, Plaintiff K.S. B.H. is a minor born in 2012. (Doc. No. 1 ¶ 3.) Plaintiff K.S. is the biological mother of B.H., and D.H. is B.H.'s biological father. (Id.) In 2015, when the events giving rise to this action occurred, Plaintiff K.S. resided with her boyfriend, Plaintiff J.H., and by agreement with D.H., had primary custody of B.H. (Id. ¶¶ 24, 26.) D.H. had visitation rights with B.H. (Id.)

B.H. has a medical history of bruising and ear pulling. (Id. ¶ 13.) On January 29, 2013, Geisinger Health pediatrician Dr. Christopher Severs examined B.H. at his one-year well child

---

[1] The following relevant facts underlying Plaintiffs' claims against the Medical Defendants, accepted as true for purposes of the pending motion to dismiss, are taken from the allegations of Plaintiffs' complaint. (Doc. No. 1.)

1

visit, and noted K.S.'s concern that B.H. was "picking at his ears a lot . . . ." (Id. ¶ 17.) Subsequently, on February 25, 2013, Geisinger Health pediatrician Dr. Joseph Romeo examined B.H. and noted that he was "pulling on [his] ear and fussy." (Id. ¶ 18.) Dr. Severs again examined B.H. on May 13, 2013 for complaints of ear pulling. (Id. ¶¶ 29-30.) In February 2015, B.H. fell down a set a steps while in the care of K.S., causing red marks to his buttocks. (Id. ¶ 28.) While B.H. was visiting with D.H. over the weekend, D.H. noticed bruising on B.H.'s buttocks and called Mifflin County Children and Youth Services ("Children and Youth Services"), to report that J.H. had abused B.H. (Id. ¶¶ 29-30.)

Subsequently, at the request of Children and Youth Services, K.S. took B.H. to the Geisinger Health pediatrician's office in Lewistown ("Geisinger Health pediatrician's office"), where it was noted that B.H. had bruising on his buttocks and back. (Id. ¶¶ 31-32.) The medical records note that K.S. claimed the bruising resulted from a fall; however, D.H. believed the bruising was the result of physical abuse. (Id. ¶ 32.) At the time, there was no documented history of requests for records from Children and Youth Services, visits for accidents or injuries, or a history of "no shows" to the pediatrician. (Id. ¶ 34.)

On August 1, 2015, B.H. fell off the porch at his home and thereafter visited the emergency room. (Id. ¶¶ 35-36.) The medical records for this visit note a laceration on his scalp and old bruising to his posterior flank. (Id. ¶ 37.) On August 14, 2015, K.S. took B.H. to the Geisinger Health pediatrician's office for an examination, at which time the pediatrician noted that B.H. had new bruising on his back, which was not present after the previous incident and that there was concern because the bruising was getting darker. (Id. ¶ 39.) At that appointment, the Geisinger Health pediatrician ordered a CBC blood test, which revealed that B.H.'s hemoglobin and hematocrit levels were higher than the normal range. (Id. ¶ 40.)

2

On August 18 and 23, 2015, K.S. took B.H. back to see Geisinger Health pediatrician Dr. Severs who examined him for follow up care for vomiting and bruising. (Id. ¶¶ 41, 43.) Thereafter, K.S. took B.H. to the Geisinger Health pediatrician's office on August 26, 2015, and to the emergency room on August 27, 2015, for symptoms of diarrhea and vomiting. (Id. ¶¶ 45-46.) On August 27, 2015, a CT scan of B.H.'s head was performed to rule out head trauma as the cause of B.H.'s vomiting; the scan was normal. (Id. ¶ 47.) However, on August 28, 2015, K.S. again took B.H. to the emergency room for continued vomiting. (Id. ¶ 48.)

On October 2, 2015, K.S. took B.H. to the Geisinger Health pediatrician's office at the request of Children and Youth Services, who was investigating a report of suspected abuse due to bruising observed on both of B.H.'s earlobes. (Id. ¶ 49.) At the time, Dr. Severs noted that B.H. had no family history of bleeding disorders, and when asked how his ears were injured, answered "[J.H.] did it." (Id. ¶ 51.) On October 9, 2015, K.S. took B.H. to the Geisinger Health pediatrician's office to request a bleeding work-up due to the repeated bruising. (Id. ¶ 52.) Accordingly, Dr. Severs ordered a screening consisting of three tests, the PT/INR-PT, PT/INR-INR & APTT, the results of which were within the normal range. (Id. ¶ 53.) On October 12, 2015, K.S. again took B.H. to the Geisinger Health pediatrician's office because B.H. fell on a step, hitting his head and bruising his knees. (Id. ¶¶ 55-56.)

On December 1, 2015, another report of suspected child abuse was made in connection with bruising on B.H.'s right ear, and Children and Youth Services instructed K.S. to take B.H. to the pediatrician. (Id. ¶¶ 58-59.) The Geisinger Health pediatrician's subsequent report to Children and Youth Services indicated that the bruises did not appear consistent with K.S.'s explanation that B.H. was bruised as a result of falling off a trampoline, and in light of the history of B.H.'s visits to the pediatrician for bruising, stated the suspicion that "something is

going on." (Id. ¶¶ 62-63.) On that same date, Detective Poff and Officer Vallimont of the Lewistown Police Department were called to the Geisinger Health pediatrician's office, and Children and Youth Services at that time: prevented K.S. from leaving with B.H.; removed B.H. from K.S.'s custody; and imposed a safety plan precluding K.S. from having unsupervised contact with B.H. (Id. ¶ 64.) On December 2, 2015, Children and Youth Services scheduled B.H. for a "CRC Interview" and an appointment with Dr. Bruno, the Medical Director of the Geisinger Medical Center's Child Advocacy Center of Central Susquehanna Valley ("CACCSV"), as part of their investigation. (Id. ¶¶ 65, 101-02.)

Dr. Bruno and Dr. Crowe both examined B.H. (Id. ¶¶ 70-71.) During the examination, B.H. had difficulty answering some questions due to his age and developmental limitations. (Id. ¶¶ 108-09.) However, both doctors agreed that no further work-up for bleeding disorders would be necessary, and diagnosed B.H. as having been physically abused. (Id. ¶¶ 70-71.) Dr. Bruno and Dr. Crowe subsequently contacted Children and Youth Services to provide the results of their examination. (Id. ¶ 112.) Dr. Crowe informed Children and Youth Services that the marks on B.H.'s ears "were not accidental and are consistent with abuse." (Id. ¶ 113.) Dr. Bruno and Dr. Crowe's medical evaluation notes were faxed by Dr. Crowe to Children and Youth Services on December 4, 2015. (Id. ¶ 73.) Plaintiffs allege that based on Dr. Crowe and Dr. Bruno's assessment, Children and Youth Services continued the existing safety plan. (Id. ¶ 116.) Further, Plaintiffs allege that based on Dr. Crowe and Dr. Bruno's assessment, on December 14, 2015, Detective Poff of the Lewistown Police Department charged J.H. with simple assault. (Id. ¶ 118.)

On May 20, 2016, B.H.'s blood was tested for von Willebrand's disease, and the results of that testing indicated that "[a]ll multimeters of von Willebrand Factor Antigen are present in

4

normal amounts." (Id. ¶¶ 135-36.) On or about September 16, 2016, B.H. was retested and diagnosed with type 1 von Willebrand's Disease. (Id. ¶ 119.) The testing hemotologist noted in her letter of the same date that "[p]atients with type 1 von Willebrand disease typically experience mucosal bleeding as a result of trauma," and that "[s]uperficial bleeding is common for children with bleeding disorders and does not necessarily mean that they are being physically assaulted." (Doc. No. 1-2 at 1.)

Based on this sequence of events, on January 5, 2017, Plaintiffs filed a complaint in this Court alleging numerous civil rights claims against the Medical Defendants as well as Mifflin County and individual defendants Casey O'Dell, Kristen Matula, and David. L. Smith, all employees of Mifflin County Children and Youth Services (collectively, the "Mifflin County Defendants"). (Doc. No. 1.) Both sets of defendants filed motions to dismiss Plaintiffs' complaint on March 7, 2017. (Doc. Nos. 12, 13.) The Medical Defendants and nonparty Geisigner Health subsequently filed a motion for protective order on March 24, 2017. (Doc. No. 19.)

After the motions to dismiss were fully briefed, this matter was referred to mediation through the Court-annexed mandatory mediation program. (Doc. No. 30.) Accordingly, the Court ordered a stay of discovery pending the resolution of the mandatory mediation process. (Doc. No. 31.) After a June 14, 2017 status conference, the Court continued the stay of discovery pending the Court's resolution of the motions to dismiss. (Doc. No. 36.) Pursuant to the report of the mediator indicating that Plaintiffs had settled their claims with the Mifflin County Defendants, on June 27, 2017, the Court issued a 60-day Order dismissing Plaintiffs' claims against those defendants, and denying their motion to dismiss as moot. (Doc. No. 38.) The pending motions are ripe for disposition.

## II. LEGAL STANDARD

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Generally, a court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion: (1) first, a court should separate the factual and legal elements of a claim, accepting well-pleaded factual matter and disregarding legal conclusions; (2) second, a court should determine whether the remaining well-pled facts sufficiently demonstrate that a plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (internal citations omitted).

In conducting its analysis, a court must accept all well-pleaded factual allegations in the complaint as true for purposes of determining whether the complaint states a plausible claim for relief, and must view the factual allegations in the light most favorable to the plaintiff. Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). The court's determination on a Rule

12(b)(6) review is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 259, 302 (3d Cir. 2011) (internal citations omitted).  The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matter incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III. DISCUSSION

In their complaint, Plaintiffs assert the following numbered claims against the Medical Defendants:  (1) a violation of due process arising out of their conclusion that B.H.'s bruising was a result of physical abuse (count 3);  (2) a violation of Fourth Amendment rights in connection with the arrest of J.H. for physically abusing B.H. (count 4);  and (3) "any other relief and/or claim against the Defendants supported by the above facts and facts obtained during discovery" (count 5). (Doc. No. 1 at 32-33.)  In addition, in the first paragraph of Plaintiffs' complaint, Plaintiffs allege that "[t]his action is brought pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983 and 42 U.S.C. § 1985;  the First, Fourth, Fifth, Sixth, Seventh and Fourteenth

Amendment[sic] of the Constitution of the United States; and Article 1 of the Pennsylvania Constitution and Pennsylvania law." (Id. ¶ 1.)

The Medical Defendants argue that Plaintiffs' complaint fails to state a claim upon which relief can be granted as to all claims asserted against them, and further challenge (1) J.H.'s standing to bring suit against the Medical Defendants,[2] and (2) Plaintiffs' attempt to proceed anonymously in this Court. (Doc. No. 18 at 18-30, 32-34.) The Court first addresses the numerous constitutional and statutory claims referenced in paragraph one of Plaintiffs' complaint before addressing the due process and Fourth Amendment claims that are the heart of Plaintiffs' allegations against the Medical Defendants.

### A. Claims Mentioned in Passing in Plaintiffs' Complaint

As an initial matter, the Court agrees with the Medical Defendants that Plaintiffs' complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1981 and § 1985. A claim under 42 U.S.C. § 1981 requires a plaintiff to allege that "(1) [he or she] is a member of a racially cognizable group; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, that is, making and enforcing contracts." Evans Supplies & Commun. Co. v. Elliott Lewis Corp., No. 06-5685, 2007 WL 1630187, at *5 (E.D. Pa. May 31, 2007) (citing Wood v. Cohen, Nos. 96-3707, 97-1548, 1998 WL 88387, at *5 (E.D. Pa. Mar. 2, 1998)). Plaintiffs' complaint contains no allegations supporting a reasonable inference of a violation of Section 1981.

---

[2] The Court does not address the Medical Defendants' argument as to J.H.'s standing to assert a due process claim against the Medical Defendants arising out of the child abuse investigation, for two reasons: (1) Plaintiff K.S. as B.H.'s mother clearly has standing to assert a due process claim against the Medical Defendants arising out of the child abuse investigation, and the Court addresses that claim on that basis; and (2) Plaintiff J.H. arguably has standing to assert a Fourth Amendment claim against the Medical Defendants arising out of his arrest, and accordingly, the Court addresses the pleading sufficiency of that claim.

Similarly, Plaintiffs' complaint fails to include allegations supporting a reasonable inference of a violation of 42 U.S.C. § 1985, Conspiracy to Interfere with Civil Rights. Such a claim requires particularized facts showing: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Slater v. Susquehanna Cty., 613 F. Supp.2d 653, 661 (M.D. Pa. 2009) (citation omitted). Plaintiffs' complaint contains no such allegations. Accordingly, Plaintiffs' complaint fails to state a claim upon which relief can be granted for violations of 42 U.S.C. §§ 1981 and 1985, and these claims will be dismissed.

The Court also agrees with the Medical Defendants that Plaintiffs' complaint fails to state a claim under the First, Fifth, Sixth and Seventh Amendments to the United States Constitution, similarly mentioned in passing in the first paragraph of Plaintiffs' complaint. The rights conferred by these Amendments would appear to be inapplicable to the facts of this case, generally applying to criminal proceedings or action by the federal government.[3] See Rittenhouse Entertainment, Inc. v. City of Wilkes-Barre, 861 F. Supp. 2d 470, 486 (M.D. Pa. 2012) (reiterating that the Fifth Amendment's due process clause applies to actions of the federal government). As Plaintiffs' complaint contains no factual allegations specifically implicating these amendments, Plaintiffs' complaint fails to state a claim upon which relief can be granted as to these amendments and therefore, any claims based on them will be dismissed.

---

[3] The First Amendment protects freedoms of speech, religion, assembly, and press. The Fifth Amendment addresses the right to a grand jury, the protections against double jeopardy and self-incrimination, and limitation on the government's power of eminent domain. The Sixth Amendment protects a defendant's right to a speedy trial, right to assistance of counsel, and right to confront adverse witnesses. The Seventh Amendment protects a right to a jury trial in certain federal civil suits. U.S. Const. Amends. I, V, VI, and VII.

Plaintiffs' asserted claims against the Medical Defendants pursuant to Article I of the Pennsylvania Constitution and unspecified provisions of Pennsylvania law are similarly subject to dismissal. Pennsylvania courts have not recognized a private cause of action arising out of the Pennsylvania Constitution. See Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (citing Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. 2006)); Sauers v. Lower Southampton Twp., No. 16-2325, 2016 WL 7319679, at *4 (E.D. Pa. Dec. 15, 2016). Further, the Federal Rules of Civil Procedure do not permit a plaintiff to allege a violation of a general body of law. See J.K. ex rel. Kpakah v. CSX Transp., No. 14-729, 2014 WL 4632356, at *4 (E.D. Pa. Sept. 16, 2014) (stating that when "[f]aced with the vast number of potentially applicable laws, neither defendants nor the Court would know where to begin in evaluating plaintiffs' claims"). Any claims asserted pursuant to a violation of Pennsylvania law will be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a), and failure to "give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

Similarly, the Court agrees with the Medical Defendants' position that count 5 of Plaintiffs' complaint is subject to dismissal for failure to comply with Federal Rule of Civil Procedure 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Plaintiffs' catch-all count 5, asserting "[a]ny other . . . claims against the Defendants supported by the above facts and facts obtained during discovery," fails to "give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. Accordingly, count 5 will be dismissed.

    **B. Substantive Due Process Claim (Count 3)**

Count 3 of Plaintiffs' complaint reads as follows:

> Defendants Crowe and Bruno claimed to have considered and rejected other bases for B.H.'s bruising without conducting the necessary testing to reach such conclusion, including claiming on December 2, 2015 that because B.H. "has had bleeding work up in the recent past, there is no need to do further lab work at this time" without testing for von Willebrand disease, the most common bleeding disorder known to medicine that affects 1% of the population and without referring B.H. to a federally funded Hemophilia Treatment Center or a hematologist for a bleeding disorder evaluation, while rendering a diagnosis of "Physical abuse of child."

(Doc. No. 1 at 32.)

In their brief supporting their motion to dismiss the substantive due process claim asserted in count 3 of Plaintiffs' complaint, the Medical Defendants argue that (1) Plaintiffs' complaint fails to allege conduct on the part of the Medical Defendants that "shocks the conscience," as required to maintain a claim for violation of substantive due process rights; and (2) any substantive due process claim based on an alleged failure to investigate is invalid. (Doc. No. 18 at 19-25.) This Court has previously written at length about the pleading requirements of a substantive due process claim asserted against medical defendants arising out of a diagnosis of physical abuse of a child in two opinions issued by this Court in <u>Billups v. Penn State Milton S. Hershey Medical Center</u>, No. 1:11-cv-01784. In its April 23, 2012 Memorandum and Order granting the motion to dismiss filed by the medical defendants in that case, this Court articulated the legal standard applicable to such claims, asserted pursuant to the Fourteenth Amendment of the United States Constitution by way of 42 U.S.C. § 1983, as follows:

> "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" <u>Baker v. McCollan</u>, 443 U.S. 137, 140, (1979). The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, Cl. 1. The Supreme Court has stated that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." <u>Troxel v. Granville</u>, 530 U.S. 57, 66 (200); <u>see also</u> <u>Miller v. City of

> Phila., 174 F.3d 368, 374 (3d Cir. 1999). This right, however, is not absolute. Croft v. Westmoreland Cty. Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997). "Indeed, this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children – particularly where the children need to be protected from their own parents." Id. In other words, "[t]he right to familial integrity . . . does not include a right to remain free from child abuse investigations." Id.
>
> To prevail on a substantive due process claim premised on the unwarranted infringement of familial rights, parents must demonstrate that the government action at issue was so egregious or ill conceived that it "shocks the conscience." Miller, 174 F.3d at 375; see also Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). This "conscience-shocking" standard is not satisfied by demonstrating that the government action was merely negligent. Id. Rather, the government action must "exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" Id. at 375-76. In assessing this issue, the "fundamental liberty interests of the family unit" must be balanced against "the compelling interests of the state in protecting children from abuse." Croft, 103 F.3d at 1125. "[D]isruption or disintegration of family life" due to a child abuse investigation "does not, in and of itself, constitute a constitutional deprivation." Id. at 1125-26. In fact, a government actor may constitutionally override parents' rights to the care, custody, and control of their children if he or she possesses "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." Id. at 1126. When a government actor possesses such evidence, his or her removal of a child from the parents' custody does not infringe on the parent's rights, even if evidence produced during the course of an investigation demonstrates that no abuse occurred. Id. To the contrary, a government actor infringes on the parents' rights by removing a child from their custody if he or she "consciously disregard[s] a great risk that there had been no abuse." Ziccardi v. City of Phila., 288 F.3d 57, 66 (3d Cir. 2002) (citing Miller, 174 F.3d at 375).

Billups v. Penn State Milton S. Hershey Medical Center, No. 1:11-cv-01784, 2012 WL 1392294, at *8 (M.D. Pa. Apr. 23, 2012).

As noted above, the Medical Defendants argue that Plaintiffs' complaint does not contain allegations from which it can reasonably be inferred that their conduct in diagnosing physical abuse of B.H. "shocks the conscience;" on the contrary, they maintain that Plaintiffs' complaint contains facts which support a reasonable inference that the Medical Defendants possessed a reasonable suspicion that B.H. had been abused. (Doc. No. 18 at 20-21.) Upon careful review of

the allegations of Plaintiffs' complaint, the Court agrees with the Medical Defendants. The entirety of Plaintiffs' allegations do not reasonably support an inference that the Medical Defendants lacked reasonable and articulable evidence of abuse or consciously disregarded a great risk that no abuse had occurred.

Perhaps in recognition of this fact, Plaintiffs' complaint attempts to characterize their substantive due process claim as one based on the Medical Defendants' failure to investigate and/or misdiagnosis of abuse. See Doc. No. 1 at 32 ("Defendants Crowe and Bruno claimed to have considered and rejected other bases for B.H.'s bruising without conducting the necessary testing to reach such conclusion"). However, as pointed out by the Medical Defendants, the argument that the Medical Defendants violated substantive due process rights by failing to rule out other causes of B.H.'s bruising was specifically rejected by this Court in a later opinion in Billups[4] addressing those medical defendants' motion to dismiss an amended complaint. This Court found:

> With respect to their claim that the Medical Center Defendants denied Plaintiffs substantive due process by failing to consider other causes of L.B.'s injuries, Plaintiffs ask the Court to conclude that parents sufficiently state a substantive due process claim where they allege that medical professionals, upon conducting examinations of their child's injuries, rendered an opinion that the child had been abused but were not absolutely certain of that opinion's accuracy. In other words, Plaintiffs request the Court to find that a substantive due process claim is sufficiently stated where medical professionals determine that abuse occurred, but subsequent investigations indicate that abuse may not have occurred. The Court declines to do so.

Billups, 901 F. Supp. 2d at 759.

The Medical Defendants argue that Plaintiffs seek to avoid dismissal of this substantive due process claim by characterizing it as one involving intentional misrepresentation, which the Court in Billups permitted to survive dismissal. In Billups, the Court permitted a claim based on

---

[4] Billups v. Penn State Milton S. Hershey Medical Center, 901 F. Supp. 2d 745 (M.D. Pa. 2012).

13

the allegation that one of the medical defendants had falsely testified that she considered alternative causes of the child's injuries before concluding that the child had been abused to proceed, reasoning that the allegation of such a misrepresentation supported a reasonable inference that the medical defendants consciously disregarded the possibility that the child had not been abused. Billups, 910 F. Supp. 2d at 760.

The Medical Defendants point out that Plaintiffs' complaint alleges that the Medical Defendants "claimed" that "[B.H.] has had a bleeding work up in the past" and further that "there is no need to do further lab work at this time" in connection with their diagnosis of "physical abuse of a child." (Doc. No. 1 at 32.) The Medical Defendants point out that the statement that "[B.H.] has had a bleeding work up in the past" cannot be a misrepresentation because it was accurate according to the allegations of Plaintiffs' complaint, which allege that B.H. underwent a bleeding work-up in October 2015 and a complete blood count in August 2015. (Id. ¶¶ 40, 53.) The Medical Defendants further argue that the statement that no further lab work was needed in light of the results of the tests already conducted (neither of which showed evidence of a bleeding disorder), and their conclusion that B.H. had been physically abused were their medical opinions, not misrepresentations.

Upon careful review of Plaintiffs' complaint, this Court must agree with the Medical Defendants that Plaintiffs are impermissibly attempting to cast a nonactionable claim of misdiagnosis into a claim of "misrepresentation." See Billups, 901 F. Supp. 2d at 759; Seldomridge, et al. v. The Penn State Hershey Medical Center, et al., No. 13-cv-2897, slip op. at 8 (M.D. Pa. Oct. 7, 2014) (following Billups and dismissing substantive due process claim against medical professional where complaint did not allege that the medical professional claimed to have conducted screening that would have ruled out a non-abuse explanation for the

child's injuries, but instead challenged medical professional's diagnosis of abuse). Plaintiffs' complaint fails to state a claim upon which relief can be granted for a substantive due process violation; accordingly, the Court will dismiss count 3 of Plaintiffs' complaint.

### C. Violation of Fourth Amendment (Count 4)

Count 4 of Plaintiffs' complaint, in its entirety, reads as follows: "[f]or J.H.'s arrest because Defendants Crowe and Bruno claimed that B.H. had a bleeding workup and diagnosed B.H.'s bruises as having been caused by physical abuse when they had failed to test B.H. for von Willebrand Disease, the most common bleeding disorder known to medicine that affects 1% of the population." (Doc. No. 1 at 33.) The Medical Defendants argue that any Fourth Amendment seizure claim against them arising out of the circumstances of J.H.'s arrest fails because Plaintiffs' complaint fails to allege facts demonstrating that they were state actors.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). In order to act under color of state law, a "defendant must have used authority derived from the state in causing the alleged harm." Harvey v. Plains Twp. Police Dept., 421 F.3d 185, 189 (3d Cir. 2005) (citing Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)).

Although the complaint is not a model of clarity, it would appear to allege that, due to their role in diagnosing B.H.'s physical abuse, the Medical Defendants were joint actors with the police regarding J.H.'s arrest for that abuse. As the Medical Defendants note, to demonstrate state action under the joint activity test, a plaintiff must demonstrate that a private actor was a "willful participant in joint activity with the State or its agents." Harvey, 421 F.3d at 195 (citing U.S. v. Price, 383 U.S. 787, 794 (1966)). The Third Circuit has stated that a private entity may

15

be deemed a state actor and be subject to Section 1983 liability for the actions of police officers if "(1) the private entity has a 'pre-arranged plan' with the police officers, and (2) under the plan, the police officers will 'substitute their [own] judgment" with that of the private entity's." Cahill ex rel. L.C. v. Live Nation, 512 F. App'x 227, 230 (3d Cir. 2013) (quoting Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984)).

The allegations of Plaintiffs' complaint concerning the Medical Defendants' status as state actors is contained in paragraphs 9 and 10. In paragraph 9, Plaintiffs allege that:

> Defendant Bruno is the medical director of the Child Advocacy Center of Central Susquehanna Valley. . . . Dr. Bruno's activities, where he is the primary medical investigator on behalf of child protective services and law enforcement, coupled with the significant entwinement between Dr. Bruno and child protective services and law enforcement during the investigation of reports of suspected child abuse, renders his actions state actions.

(Doc. No. 1 ¶ 9.) In paragraph 10, Plaintiffs allege that "Defendant Crowe is a state actor by virtue of his forensic examination of B.H. in the Child Advocacy Center of the Central Susquehanna Valley." (Id. ¶ 10.)

Here, as noted by the Medical Defendants, whether or not the Medical Defendants were engaged in joint activity with Children and Youth Services regarding the evaluation of B.H. for physical abuse, with regard to J.H.'s arrest, Plaintiffs must allege facts supporting a reasonable inference that the Medical Defendants were engaged in joint activity with the police who arrested J.H., not Children and Youth Services. Under the above legal authority, Plaintiffs' complaint must allege that the Medical Defendants had a pre-arranged plan with the police officers, who were willing to substitute their own judgment as to probable cause to arrest J.H. with that of the Medical Defendants. The complaint's only reference to interactions between the Medical Defendants and the police is in paragraph 121, where they allege that the Medical Defendants "represented to law enforcement . . . that B.H. had a 'bleeding workup,' 'there is no need to do

16

further lab work,' and that the 'Assessment' was 'Physical abuse of child'." (Doc. No. 1 ¶ 121.) Plaintiffs' complaint fails to allege facts supporting a reasonable inference that the Medical Defendants were engaged in joint activity with the police sufficient to support the required element of state action in any Section 1983 claim based on an alleged Fourth Amendment violation arising out of J.H.'s arrest.[5] Accordingly, count 4 of Plaintiffs' complaint is subject to dismissal for failure to state a claim upon which relief can be granted.

In accordance with the foregoing, the Medical Defendants' motion to dismiss will be granted in its entirety. Further, the Court finds that any attempt to amend the dismissed claims would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002) (permitting courts to deny leave to amend if any such amendment would be futile).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Medical Defendants' motion to dismiss Plaintiff's complaint, and deny as moot the Medical Defendants and Geisinger Health's motion for a protective order. An Order consistent with this Memorandum follows.

---

[5] Plaintiffs' only response on this point is to argue that in light of their assessment of B.H., it was "foreseeable" to the Medical Defendants that J.H.'s arrest would occur. However, Plaintiffs cite no legal authority for the proposition that foreseeability of an arrest renders a private actor a state actor for purposes of Section 1983 liability.